THOMAS GAY AND WILLIAM GAY v. JAMES V. HERVEY, BUILDER, AND HARLAN P. SMITH, OWNER.

1. The written consent required by the fourth and eighth sections of the mechanics' lien act, to fix a liability to lien upon the owner or landlord's interest in property, for repairs done by the tenant or a third party, is a consent to do the work or make the repairs, and not necessarily a consent, in terms or by implication, that the property shall be a pledge for the payment for such work or reparation. Nor will a clause in the consent that the work is to be done at the expense of the tenant or third party change the rule.

2. A written lease containing a provision that the tenants shall, at their own cost and expense, make and do all repairs of every description that may be necessary for the benefit and preservation of such premises during the continuance of the lease, is such a written consent as will subject the landlord's interest to a lien for repairs done by the tenant during the term.

3. A written permission, given by the landlord to the tenant, to make alterations in certain buildings upon the leased premises, all at the tenant's cost and expense, operates in the same manner to impose a liability for work done in making such alterations.

This cause was certified from the Essex Circuit. It was an action upon a mechanics' lien filed against buildings belonging to Harlan P. Smith. He had leased them to James V. Hervey. During his tenancy the tenant had caused to be done upon the buildings the work for which the lien was filed. The question involved at the trial was whether such a consent, in writing, to have the work done had been given by the landlord to the tenant, as would satisfy the fourth and eighth sections of the mechanics' lien act.

Argued at November Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the plaintiff, A. M. Hassell.

For the defendant, G. W. Hubbell.

The opinion of the court was delivered by

REED, J. The first section of the mechanics' lien act provides that every building erected, and the curtilage upon which it is erected, shall be liable for any debt contracted and owing to any person for labor or materials furnished for the construction thereof.

This sweeping provision would include every instance where a building is erected upon lands, whether by the owner of the land or by a stranger, and if by a stranger, whether with or without the owner's consent. This unlimited liability is restricted in several particulars in succeeding sections. The fourth section provides " that if any building be erected by a tenant or other person than the owner of the land, then only the building and the estate of such tenant or other person so erecting such building shall be subject to the lien created by this act, unless such be erected by the consent of the owner of such lands, in writing," &c. There is also a provision in this section for acknowledging and recording such written consent, so that it, or a certified copy of it, may be used in evidence as a record. The eighth section of the act provides a lien for debts for repairs to buildings constructed by the owners thereof, or by any other person with the consent of the owner or owners, in writing.

The bill, for the collection of which the present action was brought, was for repairs done, made through a contract by the tenant. In the attempt to sustain a lien upon the landlord's interest in the property for the bill, the claimant was compelled to show a written consent to the reparation by the landlord. For this purpose there was offered upon the trial two papers. The first was the lease of Smith to Hervey. It contains the following clause :

"And it is further agreed that the said parties of the second part shall take good care of the hereby demised premises, and shall, at their own costs and expense, make and do all repairs of every description that may be necessary for the benefit and preservation of said premises during the continuance of this lease, and not call upon the party of the first part for any

disbursements or outlay during the hereby granted term; and that all improvements made to the buildings or premises by the parties of the second part shall belong to the party of the first part at the expiration of this lease."

The second paper was a plan of buildings leased as above, upon which was the following:

"Permission is hereby given to James V. Hervey and X. Kercheski to make alterations to buildings marked Nos. 2, 3, 4, 6, 7 and 8 on above plan, by cleaning out furnaces, &c., in said buildings, leveling floors of Nos. 2 and 3, taking partitions from No. 9, and adding another story to the same if they desire to do so; it being understood that all materials taken from said buildings, and not used in reconstruction, are to belong to me, and subject to my disposal. The bricks not used to be piled on the grounds, and all iron work to be stored until such time as I can dispose of the same, all at their costs and expense."

"HARLAN P. SMITH.
"New York, April 8th, 1876."

In each of these papers appears a consent, in writing, by Smith, the landlord, that Hervey may make the repairs for which the bill here sued for was contracted. It is insisted, however, by the defendant, that the consent here proven is not such a consent in writing as is within the meaning of the statute. It is claimed that the statute means a technical consent made with a view to meeting the provisions of these sections. It is admitted that the acknowledging and recording of the written consent is not essential to give it operative force to fix a liability upon the owner's interest.

The question then squarely presents itself: What is there in the statute, or in the papers themselves, to deprive the words used in the lease, and also in the permission, of the character of a statutory consent? No person can read either paper and refuse to admit that each contains a consent that the repairs may be made upon the buildings. This is all that the words of the statute indicate is necessary to fill the requirements of

the act, and the primary rule of statutory construction is to give words their natural significance.

The argument in opposition to this course in construing these sections is based upon what is termed the reason and spirit of the lien law, and specially of these sections of that law. The contention is, that the object of the enactments under consideration was to fix a liability upon the landlord by making his property a pledge for the payment of the tenant's or other person's bill contracted in erecting or repairing a building upon the landlord's ground; that a consent, therefore, means a consent that the owner's or landlord's property shall be a pledge for such debt. The argument is, therefore, that the papers in evidence containing the alleged consent do not show that any such purpose was in the mind of the parties at the time they were drawn and delivered; but on the other hand, they do show that the repairs were to be made at the tenant's own expense.

Now it undoubtedly clearly appears from the face of the papers that all the repairs were to be made at the expense of the tenant, and that the landlord was to be disconnected from any contract for such work. From this fact alone, that coupled with the consent is a clause which impliedly relieves the landlord of all liability for the tenant's acts in making the reparation, it is argued that the consent cannot impose a liability indirectly from which, in terms, the consent relieves the consentor.

It was a like clause in a paper containing a similar consent that induced the Supreme Court of Pennsylvania to hold that such consent was not within their statute. *McClintock* v. *Creswell*, 67 *Penna. St.* 183.

But I am constrained to the conclusion that too great significance is claimed for the clause imposing the expense of the reparation upon the tenant.

The tenant does not bring this action or attempt to place a lien upon the property of the landlord. If he should attempt to do so, the terms of his lease would be a complete answer to his claim. The lien is in process of enforcement at the suit

of parties who are strangers to the lease and the written permission.

They are not interested in who is ultimately liable for the expenses of the work, excepting so far as it affects the collection of their bill. The matter of personal liability is entirely disconnected from the liability of the building and curtilage.

This is observable in other parts of the lien act. In instances of unfiled contracts for construction or reparation, there is no personal liability on the part of the owner to laborers or material-men employed by the contractor. The contractor is the party who is personally responsible to his employés and vendors. Yet the statute recognizes no distinction between this class of owners and those who employ and purchase directly. The building is liable for the debts contracted in either case, without regard to the personal liability of the owner. Nor would the rule be different if the unfiled contract contained a clause similar to that in the lease and permission in this case. Nor if it went further and stipulated that there should be no liability on the property of the owner for the payment of the contract price, or for any debt incurred in executing the contract by the builder. No such stipulation between the owner and builder could cut out the rights which the statute, upon the existence of certain facts, confers upon third parties—laborers and material-men. The fact which the statute requires as a foundation for a right to file a lien at the instance of a laborer or material-man contracting with a tenant, is the written consent of the landlord to the erection or reparation. It requires nothing more. It does not require a consent that the building shall be held as a pledge. That result the statute makes a consequence of the consent to the erection or reparation.

But the position of the defendant is, that the consent must be consistent with the idea that the owner acquiesced in the result, and that the legislature meant such a consent. If so, it is strange that the legislature failed to say so. It would not have been difficult to have said that no lien should be im-

posed upon the landlord's property, unless he had assented to the work being done upon the credit of the property.

If, however, the legislature intended to give a right of lien whenever such work was done with the landlord's consent, they used the most appropriate words to accomplish that purpose. The result of a literal interpretation of such clear and unambiguous sentences should be shown to be glaringly absurd and repugnant to the entire scheme of the mechanics' lien statute before this court should be asked to supplement the language of the legislature by supplying an alleged *casus omissus*.

But upon appeal to the reason and spirit of these enactments, I do not discover any such repugnancy. The right to file a lien upon the property of the landlord, whenever he had assented to the work, was probably based upon the view that work executed with his assent presumably benefited his property to the amount of the cost of such work. Nor does the opportunity to incur an extravagant bill, thus afforded to the tenant, by needless repairs or by bad faith, refute this idea of the legislative intent.

The same danger is incurred whenever an unfiled contract to build or repair is executed. The builder may then, by injudicious bargains, or by imperfect plans which entail the tearing away of parts already built and rebuilding the same, or by building outside of the specified design, incur a bill far beyond the contract price or the value of the constructed or repaired building. That fact, however, does not relieve the building from a liability for all of such bills contracted for labor and materials furnished in good faith. The owner can, of course, avoid the danger of such result by filing his contract. So can the landlord evade a similar result by refusing to give a consent in writing.

The provision for a written and not a verbal consent was, I think, intended only to operate to prevent perjury. I do not think there was a design to furnish a method of avoiding a liability of a lien, and at the same time, to afford to the tenant or third person a means of protecting himself from liability

for waste or trespass by securing a parol license. That the provision, however, does accomplish this, no one can doubt, whatever may have been the unexpressed intention of the legislature or the wisdom of an enactment which offers an inducement to enter into verbal instead of written agreements. Recurring to the main question, I am unable to see any ground for refusing to accord to the words of the act their literal meaning, and any reason why we should not hold that a delivered written consent to the tenant to make the repairs, imposes upon the building a liability for the debts to laborers and material-men incurred by the tenant in making such repairs. Nor is this result inconsistent with the conclusion reached in the case of *Associates of Jersey City* v. *Davidson*, 5 *Dutcher* 415. In that case there was no delivered and perfected written consent.

The remarks of Whelpley, J., intimating that the statutory consent meant a consent that the owner's property should be a security for the debt, were *obiter*.

The Circuit Court is advised that the verdict should stand.